UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE ANN HAAS,

                Plaintiff,                Case No. 4:16-cv-11817
                                        District Judge Linda V. Parker
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 18) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 18),

and **AFFIRM** the decision of the Commissioner of Social Security.

**II.    REPORT**

      Plaintiff, Jacqueline Ann Haas, brings this action under 42 U.S.C. § 405(g)

42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her application for disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

1

15), the Commissioner's cross motion for summary judgment (DE 18), and the administrative record (DE 12).

## A. Background

Plaintiff filed his application for DI benefits on July 27, 2012, alleging that he has been disabled since June 6, 2011, at age 46, but his application was denied on March 12, 2013. (R. at 138-139, 66-79.) Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ"). ALJ Ethel Revels held a hearing on May 13, 2014, at which Plaintiff was represented by counsel and Vocational Expert (VE) Diane Regan testified. (R. at 28-65.) On September 26, 2014, ALJ Revels determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-27.)

Plaintiff requested review of the hearing decision. On April 4, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Revels's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on May 21, 2016.

## B. Plaintiff's Medical History

Plaintiff's medical records span a period between November 16, 2010 and May 24, 2014. (R. at 218-494.) Although the 277 pages of medical records consist primarily of treatment records, of particular import here are: the December 28, 2012 consultative examination (CE) report of Michelle M. Rousseau, PsyD, LP

(R. at 410-420) and the February 27, 2013 CE report from Harold Nims, D.O. of Tri-State Occupational Medicine (R. at 421-430). These will be discussed as necessary below.

## C.    Hearing Testimony

Plaintiff and VE Regan testified before the ALJ. As the instant appeal does not involve a challenge to the ALJ's credibility determination, I will refrain from summarizing the testimony here and only refer to it as necessary in my analysis.

## D.    The Administrative Decision[1]

At **Step 1** of the ALJ's decision denying benefits, she determined that Plaintiff has not engaged in substantial gainful activity since June 6, 2011, the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920. Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

alleged onset date.  (R. at 14.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  a back disorder, cervical degenerative disc disease (DDD), hypertension, depression, and anxiety.  (R. at 14.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 15-16.)  At **Step 4**, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of light work (but "must allow for a sit-stand option"), with various other limitations (R. at 16-21), and further determined that Plaintiff is unable to perform any past relevant work (R. at 22).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are "unskilled light occupations" that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 22-23.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis

The body of Plaintiff's argument reveals disputes with the ALJ's Step 4 RFC determination, namely the specificity of the limitations concerning: **(1)** neck rotation, **(2)** griping, **(3)** overhead reaching, and **(4)** the sit/stand option. (DE 15 at 11-13.) The Commissioner argues for affirmance, contending that the assessed RFC is supported by substantial evidence. (DE 18 at 3, 11-16.) I will address each of these arguments, although not in the same order.

#### 1. "[H]er work must allow for a sit-stand option."

##### a. The ALJ's hypothetical to the VE and the RFC

The ALJ's opinion makes specific reference to Plaintiff's testimony about changing from seated to standing positions due to her back pain, in particular that she can stand in one position for "four to five minutes" and sit for "five to seven minutes" before having to stand. (R. at 17, 47; *see also* R. at 52, 54.) Then, the ALJ posed a hypothetical containing several limitations, including a "sit/stand option." The VE testified that such a person could perform work at the light exertional level, such as a packer (unskilled), inspector and small products assembler, and likewise used the phrase "sit/stand option." (R. at 59-60.) Neither

the RFC nor the hypothetical posed to the VE contained the "at will" modifier to the "sit/stand option." (R. at 16, 59-60.) In the end, the ALJ's RFC finding assesses the limitation that Plaintiff's work "must allow for a sit-stand option." (R. at 16.)

### b. The absence of a frequency component

Plaintiff argues that the "sit-stand option," without a frequency component (such as "at will"), is an error warranting remand. (DE 15 at 12-13.) The Commissioner argues that the ALJ was "adequately specific," and, in any event, Plaintiff has not shown resulting harm. (DE 18 at 12-15.) On this issue, I agree with the Commissioner that the ALJ was adequately specific, and the Court should affirm this limitation, as phrased.

To be sure, Plaintiff makes some thought-provoking arguments. First, Plaintiff points to SSR 83-12 and SSR 96-9p, the latter of which provides that "[t]he RFC assessment *must be specific as to the frequency* of the individual's need to alternate sitting and standing." SSR 96-9P (S.S.A. July 2, 1996) (emphasis added). Defendant asks the Court to determine that SSR 96-9p does not apply here, as it concerns the "implications of [an RFC] for less than a full range of sedentary work[,]" while the RFC employed here contains an exertional limitation of "light work." (DE 18 at 12-13.) Nonetheless, albeit in a case where neither the hypothetical question nor the RFC contained the frequency at which Plaintiff

would be required to change position, this Court has previously stated that: "While SSR 96–9 refers to sedentary rather than light work, the importance [of] determining the required frequency of position changes in determining the capacity for light work is similarly *critical*[.]" *Williams v. Comm'r of Soc. Sec.*, No. 13-CV-12617, 2014 WL 4705397, at *6 (E.D. Mich. Sept. 22, 2014) (Murphy, J., adopting report and recommendation of Whalen, M.J.) (citing SSR 83-12 (S.S.A. 1983) (emphasis added)). The relevant regulation, titled, "CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING EXERTIONAL LIMITATIONS WITHIN A RANGE OF WORK OR BETWEEN RANGES OF WORK," provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance *of either sedentary or light work* except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a []while before returning to sitting. *Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work* (and for the relatively few light jobs which are performed primarily in a seated position) *or the prolonged standing or walking contemplated for most light work.* (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferr[i]ng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a

certain task. *Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand **at will**. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.*

SSR 83-12 (S.S.A. 1983) (emphases added). In other words, *Williams* did not interpret SSR 96-9p's *title* as having operative value and pointed out that SSR 83-12, which concerns "evaluating exertional limitations within a range of work or between ranges of work," contains its own guidance on "alternate sitting and standing." Moreover, Plaintiff points out that the VE only used unskilled jobs in her "sample of jobs" that the Plaintiff could compete. (DE 15 at 12; *see also* R. at 60, 62.) Likewise, the ALJ found at Step 5 that "unskilled light occupations" were available for Plaintiff to perform. (R. at 23.) Therefore, SSR 83-12's direction that, in such jobs, "a person cannot ordinarily sit or stand at will[,]" suggests that the ALJ's RFC may be problematic.

Second, Plaintiff cites some persuasive case law from this district on the frequency issue. For example, Plaintiff relies upon *Ferguson v. Comm'r of Soc. Sec.*, No. CIV.A. 11-15072, 2013 WL 530868 (E.D. Mich. Jan. 23, 2013), wherein Executive Magistrate Judge Whalen's report and recommendation observed that:

A sit/stand option, stated either in the RFC or hypothetical question should include the required frequency of position changes. *See* SSR 96–9,1996 WL 374185, *7 (July 2, 1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). The imposition of a sit/stand *at will* requirement, allowing the individual to change positions *at any time*

> rather than [at] prescribed intervals, is the *most restrictive* of all the
> sit/stand limitations.

*Ferguson*, 2013 WL 530868 at *5 (emphasis added).  (DE 15 at 12.)  Plaintiff also

refers to *Biestek v. Comm'r of Soc. Sec.*, No. 13-11887, 2014 WL 3778262 (E.D.

Mich. July 31, 2014) (Rosen, C.J., adopting report and recommendation of

Majzoub, M.J.), wherein the Court stated:  "there is no indication that the VE

interpreted the ALJ's hypothetical to include an 'at will' sit-stand option.  To the

contrary, like in *Ferguson,* Plaintiff testified that he could sit or stand for 10 to 15

minutes before he would have to shift positions. . . . Without more, the Court

should not assume that the VE's testimony was based on the ALJ's unstated, more-

limiting 'at-will' restriction."  *Biestek*, 2014 WL 3778262 at *9.  In the case at bar,

the hypothetical to the VE and the RFC seem to be built on an assumption that the

generic "sit-stand option" is "at will."  In fact, Plaintiff testified that he could only

stand in one position for "four to five minutes[,] and could only sit for "about five

to seven minutes, and then I have to stand."  (R. at 47.)[2]

---

[2] On the other hand, in arguing that the ALJ was "specific[,]" and contending that
"[a] simple option, with no further restrictions, clearly means at-will[,]" (DE 18 at
13), the Commissioner relies upon a case wherein, as here, the RFC and the
hypothetical(s) posed to the ALJ contained a "sit/stand option without a numerical
frequency limitation[,]" and wherein the Court ultimately concluded that "the
ALJ's failure to include a time-increment frequency component to the hypothetical
questions and resultant RFC was not error."  *Kepke v. Commissioner of Social Sec.*,
No. 13-13944, 2015 WL 348747, *4-*5, *12-*13 (E.D. Mich. 2015) (Friedman, J.,
adopting report and recommendation of Binder, M.J.).

### i.    Plaintiff waived the frequency issue

However, the Court need not comment upon the possibility that the VE interpreted the ALJ's hypothetical as including an "at will" limitation.  This is so because the Commissioner has appropriately argued that Plaintiff's counsel "said nothing about this at the hearing[,]" and, therefore, "waived the issue."  (DE 18 at 14.)  As an initial matter, the case upon which the Commissioner relies here concluded:

> The reports of Drs. Gedmark and Guerrero provided substantial support for the assumptions in the hypothetical questions the ALJ posed to the vocational expert.  The hypothetical questions incorporated relevant impairments; any shortcoming was not so significant as to render the vocational expert's testimony unreliable. *The vocational expert's responses therefore satisfied the Commissioner's burden of showing the existence of a significant number of jobs whose requirements were within plaintiff's residual functional capacity.*  Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.

*Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 982 (6th Cir. 2011) (emphasis added).

Distinguishably, the claimed error in *Sims* did not involve a sit/stand option or the regulations under review here, but, rather, had to do with whether the ALJ "should have asked the vocational expert to also assume that the claimant was moderately limited in her ability to respond appropriately to changes in the work setting." *Sims*, 406 Fed. Appx. 977 at 982.  By contrast, in the instant matter the

ALJ's hypothetical to the VE did not satisfy SSR 83-12 or SSR 96-9p's guidance regarding frequency and alternating sitting and standing.

Nonetheless, it is not one of the unpublished district court cases cited by either party that tips the scale in the Commissioner's favor, but rather, the Sixth Circuit's opinion *reviewing* the *Kepke* lower court opinion that clarifies the proper analysis:

> Kepke argues that the ALJ failed to provide specifics (in the RFC and hypotheticals) as to the frequency of her need to alternate between sitting and standing. *See* Soc. Sec. Admin., SSR 96–9p, at *7 (1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Because Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument. *See Sims v. Comm'r of Soc. Sec.,* 406 Fed.Appx. 977, 982 (6th Cir.2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.").

*Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016). The Sixth Circuit continued to instruct:

> The slight error attributable to the ALJ's hypotheticals is not reversible error, and the VE properly took Kepke's limitations into account. Therefore, the VE's opinion constitutes substantial evidence that supports the ALJ's finding in step five of the disability analysis. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir.2004) ("This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work.").

*Kepke*, 636 F. App'x at 636.

Albeit also unpublished, the Sixth Circuit's decision in *Kepke*, is directly on point. In *Kepke* and in the instant case, neither the hypothetical posed at the hearing nor the RFC contained an "at will" modifier to the "sit/stand option." Moreover, Plaintiff's counsel's two questions to the VE at the hearing – one concerning manipulative limitations and the other concerning being "off-task" to "lie down" - did not examine this issue. (*See* R. at 61-63.) While, Plaintiff has raised a point worth considering as to frequency, claimants should not be rewarded for failing to object, preserve, cross-examine or otherwise speak up at the administrative hearing, nor should they be incentivized to create an appellate point on this issue through silence. Even if the ALJ made an error, the Sixth Circuit has made clear that this error was waived when claimant's attorney neither objected at the hearing nor took the opportunity to probe this issue on cross-examination of the VE.[3] Should this case pay a visit to the Court of Appeals on the issue of a failure to specify the frequency of a "sit-stand option" in both the hypothetical to the VE

---

[3] Lest there be any confusion, this case is distinct from the Undersigned's recent report and recommendation in favor of remand in a case where the sit/stand option in the ALJ's hypothetical was more generic, using the words "*some flexibility* to change positions[,]" while the Step 4 RFC afforded the claimant the "opportunity to alternate between sitting and standing while engaged in work . . . *as he desires*[;]" thus, the RFC was *more restrictive* than the hypothetical. *See Springer v. Comm'r of Soc. Sec.*, No. 2:16-CV-10681, 2017 WL 2952089, at *2-3 (E.D. Mich. June 22, 2017) (emphases added), *report and recommendation adopted*, No. 16-CV-10681, 2017 WL 2931187 (E.D. Mich. July 10, 2017).

and the RFC, coupled with a claimant's failure to examine or object to same at the hearing, it is a fair assumption that the result would be the same as in *Kepke*.

### ii.     Plaintiff fails to show harm

Finally, the Commissioner argues that Plaintiff has not shown harm, as she does not "explain how adding 'at will' to the RFC or hypothetical would have changed anything." (DE 18 at 14.)[4] This point has merit, especially upon closer examination of the actual words in question: sit/stand *option*. In both the RFC and in the hypothetical to the VE, the word *option* was used. (R. at 16, 59-60.) *Option* is defined as "[t]he right or power *to choose*[.]" Black's Law Dictionary (10th ed. 2014) (emphasis added). The word *option* does not merely *imply* choice; it *means* choice. If a claimant has a "sit/stand option," the choice is hers as to whether to sit or stand. In other words, she is able to do so "at will." The failure to add the words *at will*, in addition to the word *option*, was thus not necessary, and caused no harm to the claimant. Indeed, it would have been redundant.

----

[4] However, in the case upon which the Commissioner relies for this proposition, the VE's testimony did indicate that he "interpreted the hypothetical question to include the 'at will' sit/stand option." *Tomrell v. Commissioner of Social Sec.*, No. 10-14657, 2011 WL 7562117, *7 (E.D. Mich. Nov. 29, 2011) (report and recommendation of Whalen, M.J.), adopted by Battani, J. (E.D. Mich. Mar. 20, 2012) ("Although the ALJ should have expressly included the 'at will' qualifier before the sit/stand option in the hypothetical question, such error is harmless as the VE's testimony during both hearings demonstrates that he interpreted the question to include that restriction."). Here, the Commissioner contends that the VE "understood what the ALJ meant" and "listed three example jobs that allowed for this limitation[,]" and further contends that "Plaintiff's counsel at the hearing showed no sign of confusion on this point[.]" (DE 18 at 14-15.)

Plaintiff having waived the issue of whether frequency should have been specified by a modifier such as "*at will*," and the Court finding no harm by their lack of inclusion, the Commissioner's limitation of "sit/stand option" should be affirmed, as phrased.

### 2.    "The least" versus "the most."

As Plaintiff correctly points out, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  SSR 96-8P (S.S.A. July 2, 1996) (emphases in original).  Plaintiff takes issue with several of the limitations in the RFC, contending that:  **(a)** she "is unsure what is being said of 'the most'" she can do, and **(b)** the challenged limitations are phrased in terms of "the least" she can do rather than "the most" she can do.  (DE 15 at 11.)  This argument specifically mentions three of the assessed physical limitations.

### a.    "Her work must not require the full rotation of the neck on a constant basis."

Plaintiff testified about her neck pain at the May 13, 2014 hearing.  (*See*, *e.g.*, R. at 38-42, 48, 51-52, 55.)  Throughout the Step 4 RFC determination, the ALJ made multiple references to Plaintiff's complaints of neck pain.  For example, the ALJ noted:

- Plaintiff's September 4, 2012 statement that she could "lift only 20 pounds," compared to her May 13, 2014 testimony that she was limited in her ability to lift anything "over two pounds[,]" with neck pain playing a part in that reduction.  (R. at 17, 190, 41, 48.)

- The July 8, 2011 postoperative notes from Devon A. Hoover, M.D. of Eastside Neurosurgery, P.C., which acknowledge that Plaintiff "has had good relief of her preoperative radicular pain[,]" but is "still having a fair amount of neck pain." (R. at 18, 316.)

- The February 27, 2013 CE report, acknowledging Plaintiff's report of "chronic neck pain" and Dr. Nims's diagnosis of "chronic neck pain with radiation to the right arm . . . ." (R. at 19, 422, 426.)

- Emergency department notes dated June 7, 2013, documenting Plaintiff's report of "severe neck pain" following being "punched in the back of the neck . . . [,]" yet Plaintiff "made no complaints of tingling, radicular pain, or weakness[,]" and the cervical spine CT was "normal." (R. at 19, 448, 446-457.)[5]

Thereafter, the ALJ assigned "some weight" to Dr. Nims's opinion, finding "more specific limitations," and ultimately assessed a limitation that Plaintiff's work "must not require the full rotation of the neck on a constant basis." (R. at 20-21, 16.) This condition was included in the ALJ's first hypothetical to the VE. (R. at 59-60.)

    b.    **"She cannot engage in forceful gripping."**

As the ALJ expressly noted, the February 27, 2013 CE report from Dr. Nims documents that Plaintiff's grip strength measurements on the right and left hands

---

[5] To be exact, the notes state that Plaintiff "[d]enies radicular numbness or tingling[,]" and has "[n]o history of weakness in upper extremities." (R. at 448.) Also, the cervical spine CT revealed "[n]o fracture of malalignment." (R. at 446-457.)

were "normal," and Plaintiff was "able to write with the dominant hand[,]" "pick[]up coins with either hand without difficulty[,]" and was also "able to make a fist bilaterally." (R. at 19, 425; *see also* R. at 428.) At the May 13, 2014 hearing, the first hypothetical to the VE included, "[n]o forceful gripping." (R. at 60.) Ultimately, the ALJ assessed a limitation that Plaintiff "cannot engage in forceful gripping." (R. at 16.)

### c.  "She cannot engage in frequent overhead reaching."

As the ALJ expressly noted, Plaintiff's function report and the function report completed by her husband each indicate that Plaintiff's impairments affect her ability to reach. (R. at 17-18, 190, 198.) In addition, the ALJ expressly referred to a physical medical provider statement from 2014. Although the ALJ assigned this opinion "less weight," and while she did not expressly mention manipulative limitations contained therein, the medical provider opined that Plaintiff had "significant limitations with reaching, handling or fingering[.]" (R. at 21, 493.) Manipulative limitations include reaching, handling, fingering and feeling. *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 427 (6th Cir. 2013), *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 471 (6th Cir. 2011). At the hearing, on the issue of overhead reaching, Plaintiff's counsel pointed to physical therapy notes dated April 7, 2011, which indicate "pain in arm[.]" (R. at 56-57, 267.) Moreover, the second hypothetical to the VE included "work that does not require

frequent overhead reaching." (R. at 61.) Ultimately, the ALJ assessed a limitation that Plaintiff "cannot engage in frequent overhead reaching." (R. at 16.)

### d. Discussion

The Commissioner contends that the ALJ "assessed a proper RFC[,]" as it is "plainly stated . . . ." (DE 18 at 12.) Excepting the lack of a frequency component as to the sit/stand option, discussed above, I concur. There is no lack of clarity in the ALJ's manipulative limitations that Plaintiff "cannot engage in" either "forceful gripping" or "frequent overhead reaching[,]" and Plaintiff does not appear to be challenging the definitions of "forceful" or "frequent."

Likewise, as to the limitation that Plaintiff's "work must not require the full rotation of the neck on a constant basis[,]" she does not appear to be challenging the definitions of "full" or "constant." Instead, in contending that she "is unsure what is being said of 'the most' [she] can do from a limitation standpoint[,]" Plaintiff's notes her "significant problems with her neck and upper extremities[,]" in support of which she seemingly points to: the C5-C6 spondylosis visible in the December 31, 2010 cervical spine MRI (R. at 321, 406), the subsequent June 9, 2011 cervical discectomy and arthroplasty (R. at 434-441, *see also* R. at 299-303, 319-320), and the April 29, 2014 diagnosis of upper extremity neuropathy (R. at 482-484). (DE 15 at 11.) However, the ALJ unquestionably took the June 9, 2011 surgery into consideration. (R. at 18.) The records from April 29, 2014 were

expressly discussed at the hearing, even if these were not expressly mentioned within the decision.  (R. at 54-55.)  Moreover, even if the ALJ did not expressly cite the pre-surgery MRI in her decision, she did cite the post-surgery cervical spine MRI, which revealed "right foraminal disc protrusion and mild right-sided uncovertebral facet arthropathy . . . causing moderate right-sided neural foraminal narrowing . . . ."  (R. at 18, 222-223.)  Also, as to any record evidence that was not expressly discussed, it is further worth noting that an ALJ "is not required to analyze the relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'"  *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953).

Plaintiff has not explained an alleged lack of clarity in the ALJ's phrasing of these limitations and has not shown error in the ALJ's consideration of these pieces of evidence.[6]  To this subsequent reviewer, with the exception of the lack of a frequency component as to the sit/stand option, the ALJ's explanations are clear.  Moreover, Plaintiff does not successfully challenge the ALJ's statement that "[t]he

_____

[6] In fact, I note that while "[a]ny findings made by an SDM are not to be used as opinion evidence at the appellate level, since SDMs, as laypersons, are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06–[0]3p[,]" *Arnold v. Comm'r of Soc. Sec.*, No. 13-13468, 2015 WL 477379, at *11 (E.D. Mich. Feb. 5, 2015), the SDM in this case concluded that Plaintiff did not have manipulative limitations.  (R. at 76.)  That is to say, the ALJ's manipulative limitations were more restrictive than those set forth in the disability determination explanation.

postural and manipulative limitations provided adequately address the claimant's continued complaints of pain and limitations." (R. at 19.) As such, these limitations should be affirmed, as phrased.

### G. Conclusion

I find that neither of Plaintiff's statements of error warrants remand. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 1, 2017                          s/Anthony P. Patti

                                               Anthony P. Patti
                                               UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that this Notice was electronically filed, and the parties and/or counsel of record were served.

August 1, 2017                                 s/L. Hosking
                                               Case Manager Generalist